IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ANDREW WALKER,
ADC #118512                                                                                          PLAINTIFF

V.                            CASE NO. 5:16-CV-164-DPM-BD

D. PAYNE, *et al*.                                                                              DEFENDANTS

## RECOMMENDED DISPOSITION

### I.   Procedures for Filing Objections:

This Recommended Disposition ("Recommendation") has been sent to Judge D.P. Marshall Jr. Any party may file written objections with the Clerk of Court. To be considered, objections must be filed within 14 days. Objections should be specific and should include the factual or legal basis for the objection.

If parties do not file objections, they may waive the right to appeal questions of fact. And, if no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record.

### II.  Procedural Background:

Plaintiff Andrew Walker, an inmate in the Arkansas Department of Correction ("ADC"), filed this 42 U.S.C. § 1983 lawsuit claiming that Defendants were deliberately indifferent to his health and safety. Mr. Walker's claims arise from his fall on an icy sidewalk outside of the chow hall at the ADC's Wrightsville Unit. (Docket entries #2, #15)

The Court initially recommended that Mr. Walker's claims be dismissed based on claim preclusion.[1] (#16) Judge Marshall declined to adopt the recommendation, however, because new facts were alleged in this case that were not raised in the prior case. (#20)

The Court ordered service of process for Defendants John L. Henderson and Stephen M. Cockrell on claims that they were deliberately indifferent to Mr. Walker's safety in failing to keep the sidewalk clear of ice; for Defendant Jones on a claim that he was deliberately indifferent to Mr. Walker's need for medical care and on a claim of retaliatory transfer; and for Defendant Correctional Care Solutions ("CCS") for deliberate indifference to medical needs. (#29) Judge Marshall subsequently adopted a partial recommended disposition granting summary judgment to Defendants CCS and Jones based on failure to exhaust administrative remedies. (#98)

The remaining Defendants Henderson and Cockrell ("Defendants") have now moved for summary judgment on the merits of Mr. Walker's claims. (#113) Mr. Walker has filed a response and memorandum in support of his response, and an amended response, and the case is ripe for decision. (#123, #124, #125)

---

[1] Mr. Walker filed a prior lawsuit arising out of the same incident that is the subject of this lawsuit. *Walker v. Payne, et al.*, No. 4:14-CV-384 (E.D. Ark. dismissed Aug. 18, 2014).

2

### III. <u>Standard</u>:

In a summary judgment, the court rules in favor of a party before trial. Defendants Henderson and Cockrell are entitled to summary judgment if—but only if—the evidence, viewed in the light most favorable to Mr. Walker, shows that there is no genuine dispute about any fact that is important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

### IV. <u>Undisputed Facts</u>:

Here, the facts critical to the decision in this case are not disputed. On December 8, 2013, Mr. Walker was detained in general population at the ADC's Wrightsville Unit. (#115-6 at 14) On that day, ice and snow caused slick sidewalks and streets. (#115-6 at 16-17) Defendants Henderson and Cockrill were supervising inmates and kitchen staff at the chow hall at the Wrightsville Unit that morning. (#115-4 at 1, #115-5 at 1)

Mr. Walker asked an unidentified officer if his food could be brought to his barracks, because he was recovering from recent back surgery. (#115-6 at 17-18, 20) The officer denied Mr. Walker's request, because he did not have a medical script requiring delivery of his meals to the barracks. (#115-6 at 21) And in fact, Mr. Walker had not requested a medical script. (#115-6 at 21-23)

Mr. Walker walked to the chow hall for breakfast that morning without incident. (#115-6 at 30, 32) He testified in deposition that he saw two inmates fall on the ice as he

3

made his way to the chow hall, but he could not identify the inmates. And he did not report the falls he witnessed. (#115-6 at 30)

As he left the chow hall after breakfast, Mr. Walker did not notice any snow or ice on the sidewalk. (#115-6 at 35) He did not sense that he was in danger of falling because the sidewalk appeared to be clear. (#115-6 at 35- 36) Just outside the chow hall door, however, he fell on black ice. At that time, he noticed a pile of snow 10 or 15 feet in front of him behind the door. (#115-6 at 36) He does not know how the snow got there, but he assumes that kitchen workers used a broom or shovel to push the snow behind the door. (#115-6 at 38)

At the Wrightsville Unit, the maintenance crew typically clears sidewalks. (#115-6 at 23) Defendants Cockrell and Henderson were not on the maintenance crew and did not supervise the maintenance crew. (#115-6 at 23) Mr. Walker did not see either Defendant Cockrell or Defendant Henderson sweeping snow or moving snow behind the door. (#115-6 at 39) Mr. Walker did not see either Defendant Cockrell or Defendant Henderson attempting to clear any sidewalks that day. (#115-6 at 39) Mr. Walker maintains, however, that he did see inmates pouring what looked like water on the sidewalk. (#115-6 at 24-25)

After the fall, Mr. Walker lay unconscious for two or three minutes. (#115-6 at 41) When he regained consciousness, he recalls that Defendant Henderson was shaking his

legs and asking him questions. (#115-6 at 41) Defendant Cockrell was also present but did not say much. (#115-6 at 41)

Defendants Henderson and Cockrell were in the process of helping Mr. Walker up when he told them that he had recently undergone back surgery. (#115-6 at 42) At that point, Defendant Cockrell went back into the chow hall to supervise the inmates, and Defendant Henderson called the infirmary. (#115-6 at 43)

As he waited for help from the infirmary, Mr. Walker noticed that the pile of ice behind the door was melting and refreezing. (#115-6 at 44) Other inmates were walking out of the chow hall, but he did not see any of them slip or fall. (#115-6 at 44)

Defendant Henderson ordered two inmates to carry Mr. Walker to the infirmary and to walk on the grass to avoid slick areas. (#115-6 at 44, 46) The inmates carried Mr. Walker to the infirmary, without incident, where a nurse was waiting to treat him. (#115-6 at 45-47) Mr. Walker was not injured by the inmates who carried him to the infirmary. (#115-6 at 63-64) Neither Defendant Henderson nor Defendant Cockrell accompanied Mr. Walker to the infirmary because they were assigned to supervise the chow hall. (#115-6 at 48)

Mr. Walker remained in the infirmary for about ten minutes and was then helped back to the barracks by a fellow inmate. (#115-6 at 50) He rested on his bed, then showered. (#115-6 at 50) He was not required to use crutches, a cane, or a wheelchair as a result of his fall on the ice. (#115-6 at 50-51)

A. Claims Against Defendant Henderson

Mr. Walker asserts that Defendant Henderson was deliberately indifferent to his safety by failing to adequately supervise the clearing of the sidewalks and by failing to ensure that no ice remained outside the chow hall. (#115-6 at 59) Mr. Walker alleges that Defendant Henderson knew, through two radio calls transmitted to the infirmary, that others had slipped or fallen prior to Mr. Walker's fall.[2] (#115-6 at 61-62) Mr. Walker testified that he had no knowledge as to where other falls occurred and conceded that the other falls could have occurred anywhere on the property. (#115-6 at 63)

Mr. Walker further maintains that Defendant Henderson was deliberately indifferent to his safety by asking inmates to carry him to the infirmary instead of waiting for infirmary staff to come to the site of the fall. (#115-6 at 54, 63-64)

Mr. Walker conceded in deposition that he has no reason to believe that Defendant Henderson intended for him fall and hurt himself. He has no evidence to indicate that Mr. Henderson had any plan to hurt him. (#115-6 at 56 & 58)

B. Claims Against Defendant Cockrell

Mr. Walker faults Defendant Cockrell for failing to properly supervise snow and ice removal, but he does not allege that Defendant Cockrell knew that others had fallen on icy sidewalks prior to Mr. Walker's fall. (#115-6 at 66-67)

---

[2] Defendant Henderson denies that there was any radio "chatter" regarding inmates falling that morning before or during breakfast. (#115-4 at 2)

6

Mr. Walker also claims that Defendant Cockrell was deliberately indifferent to his safety by returning to the chow hall without intervening to stop inmates from carrying Mr. Walker to the infirmary. (#115-6 at 64) Mr. Walker notes that, by allowing inmates to carry him to the infirmary, Defendant Cockrell violated ADC policy. (#115-6 at 64-65)

It is undisputed that Mr. Cockrell was not present when Mr. Walker was carried to the infirmary. (#115-6 at 68) As with Defendant Henderson, Mr. Walker testified that he had no reason to believe that Defendant Cockrell intentionally plotted to injure him. (#115-6 at 69)

V.     **Immunity:**

   A.     Sovereign Immunity

In their motion, Defendants correctly note that Mr. Walker cannot recover money damages from Defendants Henderson and Cockrell in their official capacities. Under settled law, Mr. Walker's claims for money damages against Defendants Henderson and Cockrell in their official capacities should be DISMISSED, with prejudice. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (a civil litigant cannot recover money damages from state actors sued in their official capacities).

   B.     Individual Immunity – Deliberate Indifference

Mr. Walker claims that Defendants Henderson and Cockrell were deliberately indifferent to his health and safety by failing to properly supervise the removal of ice and

snow from the sidewalk and by ordering inmates to carry him to the infirmary rather than waiting for infirmary staff to treat him at the site of the fall, as required by ADC policy.

Under long-settled law, an official is "deliberately indifferent" only when he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Negligence, even gross negligence, is insufficient to establish liability. *Fourte v. Faulkner County*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). An "official's failure to alleviate a significant risk that he should have perceived but did not, . . . cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

Qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Thus, Defendants Henderson and Cockrell are entitled to qualified immunity unless Mr. Walker can demonstrate that they knowingly deprived him of a clearly established constitutional right. *Pearson v. Callahan*, 555 U.S. 223 (2009); *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010). "A court must ask whether it would have been clear to a reasonable officer that the alleged conduct 'was unlawful in the situation he confronted.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "If so, then the defendant officer must have been either incompetent or else a

8

knowing violator of the law, and thus not entitled to qualified immunity. If not, however—*i.e.*, if a reasonable officer might not have known *for certain* that the conduct was unlawful—then the officer is immune from liability." *Id.* (emphasis added)

Defendants contend that Mr. Walker has failed to prove a constitutional violation because, at the time of Mr. Walker's fall, they were the shift supervisors for the chow hall and were not charged with supervising inmates who were responsible for clearing sidewalks of snow and ice.

Mr. Walker theorizes that the icy sidewalks were aggravated by inmates using water to clear them. According to Mr. Walker, pouring water on sidewalks made them even more dangerous as the water froze. Using water to clear sidewalks when the temperature is below freezing is arguably not smart, but even if this was done, there is no evidence laying the blame for this ice-removal strategy at the feet of Defendants Henderson and Walker.

At his deposition, Mr. Walker conceded that he never saw either Defendant Henderson or Defendant Cockrell pour water on a sidewalk or direct an inmate to use water to clear ice from a sidewalk. (#115-6 at 69) In fact, he admitted that he never actually saw anyone pour water on the sidewalk. (#115-6 at 73)

The undisputed evidence establishes that the Defendants had no part in creating icy sidewalks and no responsibility for seeing that icy sidewalks were properly cleared. Mr. Walker's claims that Defendants Henderson and Cockrell conspired to have inmates

pour water on the sidewalks rather than properly clear them finds no support in the undisputed facts. (#115-6 at 70-71)

In his response to the motion for summary judgment, Mr. Walker asserts that Defendants Henderson and Cockrell conspired to "do nothing about the risk, when they both had a duty to supervise." (#123 at 5) He confirmed in his deposition testimony that his conspiracy allegations were limited to his belief that Defendants conspired to allow inmates to use water on icy sidewalks, which worsened the condition of the sidewalks given the freezing temperatures. (#115-6 at 69-71) As noted, however, Mr. Walker also conceded that he never saw Defendants or other inmates pour water on the sidewalks. (#115-6 at 72) Mr. Walker has not come forward with sufficient evidence to support his conspiracy claim.

In any event, courts have consistently found that slippery floors do not constitute a substantial risk of serious harm so as to violate the Eighth Amendment. *Scroggins v. Tallant*, No. 4:11-CV-4073, 2012 WL 4086773 (W.D. Ark. 2012) (citing *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004); *LeMaire v. Maass,* 12 F.3d 1444, 1457 (9th Cir. 1993) (finding that shackling a dangerous inmate in a shower does not create a sufficiently unsafe condition to state even an arguable claim for cruel and unusual punishment); *Baez v. Rosemack,* Civil No. 09–2121, 2011 WL 4062586, at *8 (D. Minn. 2011) (standing water around an ice machine does not pose substantial risk of serious harm even if defendants were aware of the water); *Carter v. Ark. Dep't of Corr.*, No.

10

5:08–CV–222, 2008 WL 4102719, at *3 (E.D. Ark. Sept. 3, 2008) (plaintiff's slip-and-fall in puddle from a leaky skylight not a cognizable conditions-of-confinement claim)).

Courts have similarly found that patches of ice and snow do not constitute a substantial risk of serious harm so as to trigger eighth amendment concerns. See *Davis v. Superintendent Somerset SCI*, 597 Fed. Appx. 42, 46 (3d Cir. 2015) (rejecting eighth amendment claim of plaintiff who slipped and fell on ice against supervisory defendants responsible for maintaining the walkways because "Eighth Amendment liability requires 'more than ordinary lack of due care for prisoner's interests or safety.'") (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *Clayton v. Morgan*, 501 Fed. Appx. 174, 176 (3d Cir. 2012) (*per curiam*) (decision to permit inmates to use the yard in spite of the presence of black ice falls short of the type of conduct constituting Eighth Amendment violation); *Cherry v. Spoato*, No. 15-CV-1832, 2015 WL 2089588, at *4 (E.D.N.Y. May 5, 2015) (finding that allegations by a prisoner that there was no salt on the ground, in spite of the presence of ice, did not constitute a constitutional deprivation); *Rummer v. North Dakota*, No. 12-CV-020, 2012 WL 6044713, at *6 (D.N.D. Mar. 27, 2012) (holding that "occasional slippery conditions resulting from winter snow and ice" are "a hazard shared by inmates and staff alike" and that at most the complaint alleged negligence), *adopted by* 2012 WL 6044720 (D.N.D. Dec. 5, 2012); *Ashford v. Hawkinberry*, No. 14-CV-1718, 2016 WL 3156483, at *5 (W.D. Pa. 2016) (holding that allegations that defendants forced plaintiff out on the yard during a cold winter day where

11

he fell on ice did not demonstrate deliberate indifference for purposes of asserting an Eighth Amendment claim).

At most, Mr. Walker has alleged negligence, and there is no evidence to show that Defendants Henderson and Cockrell were the individuals who were negligent. Mr. Walker's fall was simply an unfortunate accident. Considering the facts in the light most favorable to Mr. Walker, neither Defendant Henderson nor Defendant Cockrell knew of, nor created, a substantial risk of serious harm to Mr. Walker.

Mr. Walker also complains that Defendants Henderson and Cockrell violated ADC policy and put his health and safety at risk by having inmates carry him to the infirmary. First, the violation an ADC policy, standing alone, does not state a constitutional claim for relief. *See McClinton v. Ark. Dep't of Corr.*, 166 Fed. Appx. 260 (8th Cir. 2006) (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) (an official's failure to follow prison policies or procedures is not conduct that rises to the level of a constitutional claim)).

Second, Defendant Henderson acted reasonably to get Mr. Walker to the infirmary without leaving his assigned post. And as Mr. Walker admits, he was delivered to the infirmary without incident or further injury. Defendants Henderson and Cockrell did not knowingly violate Mr. Walker's clearly established constitutional rights. Accordingly, they are entitled to qualified immunity.

## VI. <u>Conclusion:</u>

The facts important to the outcome of this case are not in dispute. Accordingly, the motion for summary judgment filed by remaining Defendants John L. Henderson and Stephen M. Cockrell (#113) should be GRANTED and Mr. Walker's claims against them should be DISMISSED, with prejudice.[3]

DATED this 14th day of January, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

---

[3] The Defendants ask that the dismissal of Mr. Walker's lawsuit count as a strike under the Prison Litigation Reform Act ("PLRA"). (#114 at 14-15) The Court ruled in a prior order, however, that Mr. Walker's amended complaint stated a claim for deliberate indifference against Defendants Henderson and Cockrell. (#29) Accordingly, the Court should reject Defendants' request to count this case as a strike under the PLRA.

13